IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PAMELA CLONINGER, individually, and as Personal Representative of the ESTATE OF GLEN CLONINGER, | ) ) ) ) | No. 31833-8-III |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| KIM CHEN, D.O. and JANE DOE CHEN, husband and wife; ANESTHESIA ASSOCIATES OF SPOKANE, P.S.; and DEACONESS MEDICAL CENTER, | ) ) ) ) ) | |
| Respondents. | ) | |

KORSMO, J. — The sole issue in this tragic medical malpractice case concerns

the trial court's refusal to give the jury a spoliation instruction. Concluding that the

appellant did not establish that any evidence existed that the defendants could have had

a duty to preserve, we affirm.

FACTS

Glen Cloninger went to Deaconess Medical Center (Deaconess) for a routine

lithotripsy procedure to address a kidney stone problem. He did not survive the

procedure.

Although the kidney stone treatment was unremarkable, problems arose after

defendant anesthesiologist Dr. Kim Chen attempted to revive Mr. Cloninger from the

general anesthetic used for the procedure. Dr. Chen had used a Datascope machine to monitor vital signs, including blood pressure, heart rate, oxygen saturation, and temperature. The machine had been set to its factory default setting—the readings were displayed in "real time" but not recorded by the device.

After the procedure, Dr. Chen began to reverse the anesthesia and wake Mr. Cloninger. While still intubated, Mr. Cloninger became combative; nurses had to calm and restrain him. He was eventually extubated. A short time thereafter, a laryngospasm[1] blocked Mr. Cloninger's airway and caused him to asphyxiate. Dr. Chen attempted to ventilate Mr. Cloninger with a positive pressure face mask. However, Mr. Cloninger became bradycardic[2] and the medical staff called a "code" and began chest compressions. Dr. Chen twice attempted to reintubate Mr. Cloninger, but was unsuccessful. Another anesthesiologist, Dr. King, responded to the "code" and was able to reintubate Mr. Cloninger. Dr. Chen later testified that it took 60 to 90 seconds from when the "code" was declared until Dr. King was able to reintubate Mr. Cloninger.

Mr. Cloninger's vital signs were restored by the chest compressions and a ventilator between 73 and 77 minutes after the "code" was called. He was disconnected from the surgery room Datascope and connected to another Datascope machine for a transfer to the Intensive Care Unit. The surgery room was then "turned over" for the

---

[1] A laryngospasm is a spasm of the vocal cords that blocks access to the trachea.
[2] A bradycardic heart rate is less than 60 beats per minute in an adult human.

2

next procedure. As part of that routine, the Datascope originally used on Mr. Cloninger was reset, effectively erasing any information that may have been in the machine. That occurred roughly 42 minutes after Mr. Cloninger was moved to ICU.

Mr. Cloninger suffered brain damage during the fight to revive him and was rendered permanently vegetative. He died four days later when life support measures were terminated.

Mr. Cloninger's widow and children sued Dr. Chen[3] and Deaconess Medical Center. The suit focused on the actions of Dr. Chen from the attempt to revive Mr. Cloninger after the lithotripsy until the "code" was called. Dr. Chen spent significant time creating and editing his narrative of the event. The plaintiffs sought the records of the Datascope machine in order to address the doctor's narrative and expected testimony. Discovery revealed that no records from the machine existed.

Pretrial, the plaintiffs indicated that they would be seeking a spoliation instruction based on a theory of negligent failure to preserve evidence. The proposed instruction would have permitted the jury to infer that the machine's evidence was unfavorable to the hospital.[4] Plaintiffs viewed the hospital's actions in routinely resetting the device as

---

[3] Dr. Chen's practice group, Anesthesia Association of Spokane, P.S., was also a defendant. We refer to Dr. Chen and the practice group collectively as Dr. Chen.

[4] Plaintiff's Proposed Instruction A read: "If Deaconess Medical Center failed to produce evidence which was under their control and reasonably available to them and not reasonably available to plaintiff, then you may infer that the evidence was unfavorable to the defendant who could have produced it and did not." Clerk's Papers at 576.

3

negligent in light of its sentinel event policy and knowledge of the "code" call. The veteran trial judge indicated that she believed spoliation instructions were only proper when evidence was intentionally destroyed; she was open to giving the instruction if that foundation was satisfied.

At trial, the evidence was unclear about the capabilities of the Datascope used on Mr. Cloninger, in part because the machine could not be identified and probably had been disposed of by the hospital. There was testimony indicating that many of the Datascope machines could be programmed to record the machine's readings for up to two hours. However, Dr. Chen did testify that the machine used on Mr. Cloninger was set to the default "display only" setting and that he did not print out any readings because he did not know that the machine had the ability to print the information. There was no evidence that the machine recorded any information while used on Mr. Cloninger.

At the conclusion of testimony, the trial court declined to give plaintiffs' proposed instruction. The jury returned verdicts in favor of Dr. Chen and the medical center. The plaintiffs then timely appealed to this court.

## ANALYSIS

The sole issue presented by this appeal is whether the court erred in failing to give the proposed spoliation instruction. Plaintiffs admit they are asking this court to expand Washington law to permit spoliation instructions when evidence is negligently

4

destroyed or not preserved. Defendants raise several joint arguments, including contentions that spoliation instructions are appropriate only when evidence is intentionally destroyed, there was no duty to preserve the evidence, and no evidence was destroyed. Separately, Dr. Chen argues that any error in failing to give the instruction was harmless in his case since the proposed instruction applied only to Deaconess.

We decline the opportunity to decide whether negligence is a sufficient basis to give a spoliation instruction because, even if we accept the plaintiffs' argument, they failed to establish an entitlement to the instruction because they cannot show that any evidence was destroyed.

The plaintiffs' argument has its genesis in our decision in *Henderson v. Tyrrell*, 80 Wn. App. 592, 910 P.2d 522 (1996). That case involved an action for personal injuries brought by the four occupants of a car involved in a single vehicle accident. The three plaintiffs alleged that the car was driven by its owner, defendant Tyrrell, and presented expert testimony supporting their position. Tyrrell, who sustained a head injury in the accident, claimed one of the plaintiffs was driving and presented expert testimony suggesting that was the case. *Id.* at 596-99. The automobile had been preserved for approximately 22 months after the accident, but had been sent to salvage before any experts examined it. *Id.* at 603-04. The plaintiffs sought to dismiss the defendant's counterclaim or limit his evidence as a sanction for the destruction of the

car. *Id.* at 604. Finding no willful destruction of evidence, the trial court declined to instruct the jury on spoliation. *Id.*

This court affirmed after giving the issue significant consideration. *Id.* at 604-11. The court concluded that there was no evidence of bad faith by the defendant, there was no duty to preserve the wrecked vehicle, and the evidence was available to both parties over the 22 month period. *Id.* at 609-11. In the course of its analysis, this court relied upon a legal dictionary to define spoliation as the intentional destruction of evidence. *Id.* at 605. Citing to an Alaska decision, this court determined that whether or not a sanction should be imposed was dependent upon the importance of the evidence and the culpability of the party that destroyed the evidence. *Id.* at 607 (citing *Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995)). It was in this context that this court concluded that Mr. Tyrrell had not acted in bad faith. *Id.* at 609-10.

The appellants urge this court to clarify *Henderson* and conclude that Washington permits a spoliation claim when a party has a duty to preserve evidence and negligently fails to do so. *Henderson* had begun its discussion of the spoliation issue by acknowledging that there were various approaches to addressing such claims. *Id.* at 604-06. One approach was that adopted by *Sweet*, where Alaska decided that the failure of the medical defendant to preserve necessary records resulted in a shift of the burden

6

of the medical malpractice action from the plaintiff to the defendant. *Id.* at 605.[5] As noted, even though it defined spoliation as the intentional destruction of evidence, the *Henderson* court used *Sweet's* two-step duty and culpability analysis for determining whether a sanction was appropriate. *Id.* at 607-11.

In light of the fact that *Henderson* essentially used a negligence standard for determining that no sanction was required and that *Henderson* has been repeatedly cited and followed in subsequent Washington cases, appellants ask that we confirm that Washington recognizes a claim for negligent failure to preserve evidence. We decline to do so because it would not aid appellants in this case.

There is no evidence in this record that the Datascope used on Mr. Cloninger in surgery retained any information that could have been printed in a timely fashion. Dr. Chen used the machine on a "display only" setting and did not even know that it could record and print data. The hospital's policy was to reset the machines to a factory default setting that did not record information. Although the Datascope could be programmed to retain information for two hours, there simply was no evidence that the machine used on Mr. Cloninger was ever recording any information. It is mere speculation to believe that

---

[5] *Sweet* also involved a claim for negligent spoliation, a tort that the Alaska Supreme Court did not then adopt after concluding that its burden shift in the underlying malpractice action was sufficient remedy for the hospital's failure to preserve its records. 895 P.2d at 492-93.

No. 31833-8-III
*Cloninger v. Anesthesia Assoc.*

any information would have been obtained if Deaconess personnel had sought to print the machine before "turning over" the surgery room.

In the absence of any evidence that could have been preserved, there is no basis for determining whether the defendants had a duty to preserve the evidence or that the failure to do so should be actionable via a spoliation instruction. Under these facts, we would be doing nothing more than rendering an advisory opinion.

Accordingly, the trial court did not err in declining the requested instruction. The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

8